**William ARVIDSON et al., Plaintiffs-Appellants,**

v.

**DILLINGHAM CORPORATION, a corporation doing business under the assumed business name of Albina Engine & Machine Works, Defendant-Appellee.**

**No. 25951.**

United States Court of Appeals,
Ninth Circuit.

May 26, 1972.

Alex L. Parks (argued), of Parks Teiser & Rennie, Portland, Or., Edwin C. Lagerquist, of Smith, Anderson, Jacob & Lagerquist, Portland, Or., for plaintiffs-appellants.

Garry P. McMurry (argued), of McMurry, Sherry, Nichols & Cox, Portland, Or., for defendant-appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

This is an appeal from a summary judgment in favor of defendant-appellee in four separate actions (consolidated for trial) commenced by plaintiffs-appellants, who were painters employed by

---

* Honorable William J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

appellee, for personal injuries suffered in an explosion and fire on a barge which was being constructed by appellee for its own use.[1] Appellee voluntarily commenced the payment of benefits under the Oregon Workmen's Compensation Law, Oregon Revised Statutes 656.-001 et seq., and the payments were accepted by appellants.[2]

■ In their complaints appellants alleged both negligence and unseaworthiness. They later conceded that they could not recover for unseaworthiness because the vessel was not in navigation when they sustained their injuries. They contend that they have a direct cause of action against their employer for negligence in failing to furnish them a safe place to work. Appellee contends, and the district court held, that because appellants have been compensated under the Oregon Workmen's Compensation Law[3] they are barred from further recovery by the Longshoremen's and Harbor Workers' Compensation Act.[4] In granting summary judgment the district court concluded:

"Notwithstanding plaintiffs' excellent briefs, I have concluded that the Longshoremen's and Harbor Workers' Compensation Act of 1927 does preclude the actions. Moreover, because the actions are not based on unseaworthiness, they are not within the judicial exception of Seas Shipping Co. v. Sieracki, 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946) and its progeny: Ryan [Stevedoring] Co. v. Pan-Atlantic [S.S.] Corp., 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956); Reed v. The Yaka, 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448] (1963); and Jackson v. Lykes [Brothers] Steamship Co., 386 U.S. 731 [87 S.Ct. 1419, 18 L.Ed.2d 488] (1967)."

We agree and affirm.

Appellants argue that the decisions of the Supreme Court in Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L. Ed.2d 448, and Jackson v. Lykes Bros. Steamship Company, 1967, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488, holding that Section 5 of the Longshoremen's Act (33 U.S.C. § 905) does not bar an

1. The barge was being constructed on appellee's marine railway located on the Willamette River in Portland, Oregon. The lower portion of the railway extends into the Willamette at low water while the middle and upper portions are on dry land at normal stages of water. The bulk of the railway is wholly submerged at normal stages of high water. Like the court below, we assume arguendo that the barge was a "vessel" and was "in navigable waters" and the appellants were doing work traditionally that of "seamen".

2. We do not decide whether appellants were entitled to compensation under the Oregon Workmen's Compensation Law or the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 901 et seq. This would appear to depend on whether the accident occurred "upon the navigable waters of the United States", 33 U.S.C. § 903(a), a point not in issue here. See Note 1, supra, and Victory Carriers, Inc. v. Law, 1971, 404 U.S. 202, 207–208, 92 S.Ct. 418, 30 L.Ed.2d 383.

3. Oregon Revised Statute 656.018 provides in part that an employer who satisfies the duty to provide Workmen's Compensation coverage "is relieved of

all other liability for compensable injuries to his subject workmen * * *" and the rights of the workman "are in lieu of any remedies they may otherwise have for such injuries against the workman's employer * * *."

4. The Act provides in pertinent part:
"*Coverage*
"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 U.S.C. § 903.
"*Exclusiveness of liability*
"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, * * *." 33 U.S.C. § 905.

action by an employee against his employer for *unseaworthiness* constitute a "virtual elimination of Section 5" and should be extended to permit an action for the employer's *negligence*.

The Court had held in Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099, that a shipowner's warranty of seaworthiness extended to a longshoreman injured while loading the ship, even though the longshoreman was employed by an independent contractor. In Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, an employee of a stevedoring contractor obtained a judgment against a shipowner. The Court held that the contractor must reimburse the shipowner for damages caused by the contractor's breach of its duty to stow the cargo properly and safely. In referring to *Sieracki* and *Ryan,* the Court in *Reed* said in part:

"But we cannot now consider the wording of the statute alone. We must view it in the light of our prior cases in this area, like *Sieracki, Ryan,* and others, the holdings of which have been left unchanged by Congress. In particular, we pointed out in the *Sieracki* case, which has been consistently followed since, that a shipowner's obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or by the absence of contracts and that the shipowner's obligation is rooted, not in contracts, but in the hazards of the work."

5. The Court concluded that it would produce "a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service." 373 U.S. at 415, 83 S.Ct. at 1353.

6. Appellants stress the fact that in the opening paragraph of the opinion in *Jackson,* the Court refers to the fact that the complaint alleged both negligence and unseaworthiness. This is the only time negligence is mentioned in the

The Court continued:

"In the light of this whole body of law, statutory and decisional, only blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid." [5] 373 U.S. at 414–415, 83 S.Ct. at 1353.

In *Jackson,* a longshoreman, employed by a shipowner in navigable waters, died from inhalation of noxious gases. His widow sued in Louisiana State court alleging that his death was proximately caused either by the shipowner's negligence in operating the ship or by the ship's unseaworthiness.[6] The Louisiana courts held that the action was barred by § 5 of the Longshoremen's and Harbor Workers' Act, distinguishing Reed v. The Yaka, supra, on the ground that it involved an action *in rem* and the intervention of a third party. In reversing, the Supreme Court followed *Reed* and held that a longshoreman employed on a ship, whether by an independent contractor or by the shipowner, can recover for the unseaworthiness of the ship.

It is conceded that all of the cases in which the Supreme Court has permitted recovery by a longshoreman from his employer were based on a charge of unseaworthiness.[7] Subsequent to *Jack-*

opinion, and it is clear that recovery was permitted on the ground of unseaworthiness.

7. Under different factual situations, a number of courts have rejected the contention, asserted by appellant, that the holding in *Jackson* should be extended to permit recovery for negligence from an employer under the Longshoremen's and Harbor Workers' Compensation Act and other acts making compensation under the act the exclusive remedy against the employer. See, e. g., Atkins v. Greenville Shipbuilding Corp., 5 Cir. 1969, 411 F.2d 279, cert. denied 396 U.S. 846, 90 S.Ct. 105, 24 L.Ed.2d 96; Vantrease v. United States, 6 Cir. 1968, 400

*son*, the Court has continued to recognize a clear distinction between liability based on unseaworthiness and liability based on negligence—most recently in Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 498–499, 91 S.Ct. 514, 27 L.Ed.2d 562,[8] where the Court said:

"A major burden of the Court's decisions spelling out the nature and scope of the cause of action for unseaworthiness has been insistence upon the point that it is a remedy separate from, independent of, and additional to other claims against the shipowner, whether created by statute or under general maritime law. More specifically, the Court has repeatedly taken pains to point out that liability based upon unseaworthiness is wholly distinct from liability based upon negligence. The reason, of course, is that unseaworthiness is a *condition,* and how that condition came into being— whether by negligence or otherwise— is quite irrelevant to the owner's liability for personal injuries resulting from it.

"We had occasion to emphasize this basic distinction again in Mitchell v. Trawler Racer, 362 U.S. 539 [80 S.Ct. 926, 4 L.Ed.2d 941], * * * What has evolved in our case law, we said, is the 'complete divorcement of unseaworthiness liability from concepts of negligence.' 362 U.S. at 550 [80 S.Ct. at 933]."

Thus the Court in emphasizing the basic distinction between unseaworthiness and concepts of negligence has recognized that a shipowner is charged "with the traditional, absolute, and nondelegable obligation of seaworthiness" (*Reed*), and that a cause of action based on unseaworthiness is "a remedy separate from, independent of, and additional to other claims against the shipowner, whether created by statute or under general maritime law (*Usner*)." There is no parallel in the area of maritime negligence. There is no absolute or nondelegable obligation on the part of the employer and no additional or independent cause of action.

■ The Longshoremen's and Harbor Workers' Act was designed to provide compensation to employees engaged in maritime employment where recovery through workmen's compensation might not validly be provided by state law. Nogueira v. N.Y., N.H. & H. Co., 1930, 281 U.S. 128, 131, 50 S.Ct. 303, 74 L.Ed. 754. For those employees entitled to compensation, the remedy is exclusive under Section 5. South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 256, 60 S.Ct. 544, 84 L.Ed. 732.[9] Where the employer is also a shipowner, Section 5 does not preclude an action for unseaworthiness, but we find nothing in any of the decisions of the Supreme Court to suggest that this additional right of recovery would be extended to an action for negligence.

Affirmed.

F.2d 853; Storey v. Garrett Corporation, C.D.Cal.1967, 43 F.R.D. 301; Miller v. United States, E.D.Va.1969, 307 F.Supp. 932.

8. In *Usner* a longshoreman employed by an independent contractor sought damage for injuries allegedly caused by the ship's unseaworthiness. The Court held that an "isolated, personal negligent act of the petitioner's fellow longshoreman" would not permit recovery for unseaworthiness. It was recognized that petitioner was covered fully under the Longshoremen's and Harbor Workers' Compensation Act. 400 U.S. at 498, n. 10, 91 S.Ct. 514. While the Court did not consider the question presented here, since petitioner did not seek recovery for negligence, the Court's clear recognition of the "complete divorcement" of the concepts of unseaworthiness and negligence is pertinent.

9. See also Moragne v. States Marine Lines, Inc., 1970, 398 U.S. 375, 394, n. 11, 90 S.Ct. 1772, 26 L.Ed.2d 339.